UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**FILED**

04 JAN 28 PM 4: 22

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| NATURE QUALITY VINE RIPE TOMATOES, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) |
| RAWLS BROKERAGE, INC., *et al.*, | ) ) |
| Defendants. | ) |

Civil Action No. CV-04-0016-S

ENTERED

## MEMORANDUM OPINION

This action is before the court on the parties' joint motion for entry of an agreed

preliminary injunction and PACA claims procedure.[1]

## I. BACKGROUND

The dispute forming the basis of this action arises under the Perishable Agricultural

Commodities Act of 1930, as amended ("PACA"), 7 U.S.C. §§ 499a-t. The Eleventh Circuit

elucidated the purpose and scheme of PACA in *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d (11th

Cir. 1990), saying:

> Congress enacted PACA in 1930 to encourage fair trading practices in
> the marketing of perishable commodities. Under PACA, the Secretary of
> Agriculture ("the Secretary") must license all commission merchants, dealers,
> and brokers (hereinafter collectively "produce dealers") of perishable
> agricultural commodities placed in interstate or international commerce. 7
> U.S.C.A. § 499c (West 1980). PACA also requires produce dealers to make
> "full payment promptly" for any produce they purchase. 7 U.S.C.A. § 499b(4)
> (West Supp. 1990).

. . . .

---

[1]Doc. no. 5.

> Congress amended PACA in 1984 to establish a nonsegregated statutory trust under which a produce dealer holds its produce-related assets as a fiduciary until full payment is made to the produce seller. 7 U.S.C.A. § 499e(c) (West Supp. 1990). The trust automatically arises in favor of a produce seller upon delivery of produce. 7 U.S.C.A. § 499e(c)(2) (West Supp. 1990). An unpaid seller loses the benefits of the trust unless it files written notice of its intent to preserve its rights with the United States Department of Agriculture and the produce dealer. 7 U.S.C.A. § 499e(c)(3) (West Supp. 1990). For produce sellers, a principal benefit of the trust is that they are placed first in line among creditors for all produce-related assets if the produce dealer declares bankruptcy.

*Frio Ice*, 918 F.2d at 155-56 (footnote and some internal citations omitted).[2]

The statute also provides for a private right of action in federal court to a produce seller seeking to enforce a PACA trust. *See* 7 U.S.C. § 499e(b)(2) ("[The liability of a produce dealer for nonpayment] may be enforced . . . by suit in any court of competent jurisdiction . . . ."); *Frio Ice*, 918 F.2d at 158 (observing that a "district court has jurisdiction to entertain injunctive actions by private parties" to enforce a PACA trust).

Plaintiff Nature Quality Vine Ripe Tomatoes ("Nature Quality") is a wholesale seller of produce in interstate commerce, and holds a current PACA license.[3]  Plaintiff James L. Suttles is the proprietor of Nature Quality. Defendant Rawls Brokerage also allegedly holds a PACA license.[4]  Defendant Jess Rawls ("Rawls") is the principal of Rawls Brokerage. Defendants agreed to purchase produce, having a value of $181,427.00, from plaintiffs.

---

[2]The omitted footnote provides, "[t]he Code of Federal Regulations defines 'full payment promptly' as payment within ten days after acceptance of regulated produce unless the parties execute a specific written agreement to the contrary at the time of the sale." *Frio Ice*, 918 F.2d at 156 n.1 (citing 7 C.F.R. § 46.2(aa) (1990)).

[3]*See* doc. no. 1 (complaint), at ¶¶ 1, 5, 13.

[4]*Id.* at ¶ 9.

Defendants received and accepted the produce, but never paid plaintiffs, despite plaintiffs' written demands for payment.[5] Thereafter, plaintiffs brought suit in this court, stating claims for violation of the PACA trust provisions, breach of contract, and breach of fiduciary duty against defendants.

Soon after plaintiffs filed suit, the parties submitted a "Consent Injunction And Agreed Order Establishing PACA Claims Procedure" to the court's chambers, in an effort to resolve plaintiffs' claims. The court conducted a telephone conference with the parties to discuss some of the court's concerns with the proposed order. The parties subsequently submitted a "Joint Motion For Entry Of Agreed Preliminary Injunction and PACA Claims Procedure,"[6] and a corresponding brief.[7] Upon consideration of the PACA statutory provisions, the parties' brief, and the relevant case law, the court concludes that it cannot enter the joint injunction in the form proposed by the parties.

## II. DISCUSSION

The parties recognize that Rawls Brokerage ("the company") is no longer operational, and that its assets are insufficient to satisfy the claims of all creditors having PACA claims against it.[8]   Accordingly, the parties have proposed a claims procedure by which all remaining assets of the company will be preserved to the maximum extent possible for PACA creditors. Pursuant to the parties' proposed order, defendants are required to establish

---

[5]*Id.* at ¶¶ 7-12.

[6]Doc. no. 5.

[7]Doc. no. 6.

[8]Doc. no. 5, at ¶ 8.

a trust account at a bank, and to deposit into the account all of the company's remaining liquid or negotiable assets, along with any additional money the company may collect on PACA-related receivables in the future.[9] Defendants' counsel is to serve as the trustee and administrator of the trust.[10] All unpaid suppliers of produce to defendants are to be identified and given notice of their right to make a claim to the PACA trust proceeds.[11] The proposed order grants all such claimants the right to intervene, and requires them to file and serve on the parties a proof of claim, along with any documents supporting their entitlement to a portion of the trust proceeds.[12] The parties are given the right to object to any claim made, and if the dispute cannot be resolved among the parties, the court will rule on the objection.[13] Each party determined to have a valid claim to the PACA trust proceeds will be entitled to a *pro rata* share of the trust proceeds, including accrued interest.[14] The proposed order also provides that any party who fails to file a proof of claim under the established procedure will be forever barred from a PACA-related claim against defendants.[15] The court is proposed to exercise *in rem* jurisdiction over the PACA trust, and to retain jurisdiction to "enter further Orders to enforce the terms of this PACA Claims Procedure."[16]

---

[9]*See id.* at Exhibit A (Consent Injunction and Agreed Order Establishing PACA Claims Procedure), at ¶¶ 7-8.

[10]Doc. no. 5, at ¶ 10.

[11]Consent Injunction, at ¶¶ 13-14.

[12]*Id.* at ¶¶ 15-16.

[13]*Id.* at ¶¶ 20-23.

[14]*Id.* at ¶¶ 8, 25-27.

[15]*Id.* at ¶ 18.

[16]*Id.* at ¶ 28.

The court agrees with the basic framework proposed in the parties' order.  Although the PACA statute itself does not establish a mechanism for administration of a PACA trust, *In re United Fruit and Produce Co.,* 119 B.R. 10, 11 (D. Conn. 1990), the court has authority to establish its own procedures, but only to the extent such procedures are in accord with the purpose of the statute and with fundamental due process requirements.

In *Frio Ice,* the Eleventh Circuit held that a district court has authority to order PACA defendants to create segregated trust accounts in order to enforce payments to trust beneficiaries.  *Frio Ice,* 918 F.2d at 158-59.  The court noted that the proper test to employ in determining a district court's authority to enforce PACA was *not* whether there was a positive grant of authority from the statute, or the legislative history of the statute.  *Id.* at 159.  Rather, the proper test was whether there was "a clear congressional command to *preclude* such relief." *Id.* (citing *Califano v. Yamasaki,* 442 U.S. 682, 705, 99 S. Ct. 2545, 2559, 61 L. Ed. 2d 176 (1978)) (emphasis supplied).  The Eleventh Circuit found no such restriction in PACA or its legislative history.  Instead, it found that the legislative history of PACA indicated a clear congressional intent to prevent dissipation of PACA trust assets, and that segregation of the trust assets was "an important tool for achieving that purpose." *Id.*  Thus, the district court had authority to order segregation of PACA trust assets.  *See id.* ("Upon a showing that the trust is being dissipated or threatened with dissipation, a district court should require the PACA debtor to escrow its proceeds from produce sales, identify its receivables, and inventory its assets.").

Thus, the Eleventh Circuit does not restrict a district court's authority to fashion relief

-5-

under PACA simply because there is no statutory framework for administration of a PACA trust. If the relief proposed is consistent with PACA's purpose and history, and is otherwise lawful, the district court has authority to order such relief.

The procedure proposed by the parties is consistent with PACA's purpose of preserving trust assets for the benefit of unpaid sellers of produce. All qualified PACA beneficiaries are entitled to receive a *pro rata* share of PACA trust assets when the corpus of the trust is insufficient to satisfy the claims of all beneficiaries in full. *See Fresh Kist Produce, LLC v. Choi Corp.,* 223 F. Supp. 2d 1, 4 (D. D.C. 2002); *In re United Fruit and Produce Co.,* 119 B.R. at 12; *Finest Fruits, Inc. v. Korean Produce Corp.,* No. 87CIV.6579, 1988 WL 96028, at *3 (S.D.N.Y. September 6, 1988). The proposed procedure provides for such *pro rata* distribution. Further, and in accordance with case law construing PACA, the proposed procedure allows PACA trust beneficiaries to have priority over all other creditors of defendants; even if the other creditors hold perfected security interests. *See, e.g., Gargiulo v. G.M. Sales, Inc.,* 131 F.3d 995, 999 (11th Cir. 1997) ("The PACA grants the sellers of such commodities the right to recover against the purchasers and puts the sellers in a position superior to all other creditors."); *Frio Ice,* 918 F.2d at 156 ("For produce sellers, a principal benefit of the trust is that they re placed first in line among creditors for all produce-related assets if the produce dealer declares bankruptcy."); *In re United Fruit and Produce Co.,* 119 B.R. at 11 ("The PACA statute grants trust beneficiaries priority over parties holding perfected security interests in the trust property.").

In summary, the court finds that *most* of the provisions of the proposed order provide

a reasonable and efficient way to administer the PACA trust, and that they ensure that all potential claimants receive the *pro rata* share of the trust proceeds to which they are entitled.

However, the court disagrees with two provisions of the proposed order stating that claims of other creditors are barred. *First*, the proposed order states that "[a]ny supplier or creditor who fails to timely file [a] proof of claim with the Court and serve it on those persons listed in ¶ 17 above, shall be forever barred from thereafter asserting any claim against the Company, its officers or employees, under the PACA or for non-payment of Produce sold, whether in this Court or any other forum."[17]  The court cannot agree to this provision in light of constitutional due process concerns.  Courts have cautioned that PACA creditors must be allowed to bring their claims unless they receive notice that their claims will be barred by their non-participation in a PACA claims procedure. *See Produce Alliance, LLC v. Fresh America Corp.,* No. Cv.A.3:03-CV-0152-G, 2003 WL 21554513, at *2 (N.D. Tex July 8, 2003) (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950)).  The above provision, stating that "[a]ny supplier or creditor who fails to timely file [a] proof of claim with the Court and serve it" on the proper parties is barred from asserting its claims, is too broad, insofar as it also would bar the claims of creditors and suppliers who *did not* receive proper notice of the claims procedure.

*Second,* the court cannot agree with the first paragraph of the proposed consent injunction, which provides:

> Any and all pending actions by or on behalf of other creditors of

---

[17]*Id.* at ¶ 18.

Defendants are hereby stayed and all subsequent actions by any creditor of the Defendants are hereby barred.  This prohibition shall apply to all actions or proceedings in all courts or other forums pending further Order of this Court. All persons or entities having unsatisfied claims against the Defendants shall have the right to seek a recovery on such claims in this action only by following the procedure established herein.[18]

The statutory language creating the PACA trust provides that

> [p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust . . . .

7 U.S.C. §499e(2) (emphasis supplied).  Thus, the trust encompasses only those portions of defendants' assets that derive from transactions in perishable agricultural commodities. Defendants' other assets are not relevant to any PACA claims mechanism. *See also Produce Alliance, LLC v. Fresh America Corp.*, No. 3:03-CV-0152-P, 2003 WL 21448390, at *2 (N.D. Tex. June 16, 2003) ("not all assets of a commission merchant, dealer, or broker are subject to PACA's trust provisions. . . .  Assets not identifiable as or traceable to assets specified as trust assets in the statute are not trust assets.  Consequently, claims aimed at such assets are not subject to PACA procedures.") (internal citations omitted).[19]

Accordingly, the first paragraph of the proposed injunction is too broad, because it provides that *all* pending actions by *all* other creditors in *all* other proceedings taking place in *all* other courts and forums are barred.  As it is presently stated, that provision would bar actions by creditors who did not engage in produce-related transactions with defendants, and

---

[18]*Id.* at ¶

[19]This case is a companion case to the case bearing the same name cited at page 7, *infra.*

who do not have PACA claims. The court's authority does not extend so far. It is true that the claims of the non-PACA creditors will be subordinate to the PACA claims encompassed in this action. *See, e.g., Frio Ice,* 918 F.2d at 156. However, those creditors still should have the right to bring their claims, subject to their subordinate status.

### III. CONCLUSION

The court agrees with the basic framework established by the parties' proposed joint injunction. However, the court does not agree that it has authority to bar present or subsequent actions by non-PACA creditors, or to bar claims by PACA creditors who did not receive notice of the PACA claims procedure. Accordingly, the motion for entry of an agreed preliminary injunction and PACA claims procedure will be denied, but without prejudice to the parties' right to refile the motion in accordance with the limitations imposed herein. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this _28th_ day of January, 2004.

_____
United States District Judge