UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NATURE QUALITY VINE RIPE TOMATOES, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Civil Action No. CV-04-0016-S ) |
| RAWLS BROKERAGE, INC., *et al.*, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This action was commenced on January 5, 2004, by Nature Quality Vine Ripe Tomatoes, Inc. ("Nature Quality") and James Suttles. Their claims are based upon the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. § 9 *et seq.*[1]

Nature Quality and Suttles originally named only Jess Rawls and Rawls Brokerage, Inc., as defendants to their claims. Plaintiffs alleged that Rawls and Rawls Brokerage violated plaintiffs' PACA rights by failing to pay for shipments of produce defendants received from plaintiffs, and by failing to maintain sufficient assets in a PACA trust account to satisfy the unpaid claims. The complaint also included a count for breach of contract under Alabama law.

On February 3, 2004, and based upon the parties' joint motion, the court entered

---

[1] *See* doc. no. 1 (complaint).

a consent injunction and order establishing a PACA claims procedure ("the Consent Order").[2] The purposes of the Consent Order were these: to ensure maximum preservation of all PACA trust assets; *to allow all unpaid suppliers of produce to Rawls Brokerage to file Proofs of Claim and complaints in intervention with the court*; and, to arrange for a *pro rata* distribution of all PACA trust assets to those parties asserting valid claims.

In accordance with the terms of the Consent Order, the following entities all filed Proofs of Claim and complaints in intervention: Agricap, LLC, as Assignee of Natural Sun Citrus; Allstate Produce, LLC; Alta Fresh, LLC; Anthony Farms, Inc.; Binova Produce, Inc.; Bushmans,' Inc.; Canon Potato Company, Inc.; Central American Produce, Inc.; Del Ray Avocado Company, Inc.; Dole Fresh Vegetables, Inc.; El Paso Fresh Produce, Inc.; Emerald Packing Company, Inc.; Fagerberg Produce Company, Inc.; Florida-Georgia Produce, Inc.; J & J Ranch Produce, Inc.; Marker 29 Produce, Inc.; Santa Cruz Melon, Inc.; Skyline Potato Company, Inc.; Sunkist Growers, Inc.; Symms Fruit Ranch, Inc.; Sy Katz Produce, Inc.; Virginia Fruit Sales, Gilbert E. Sine, Proprietor; Wysocki Sales, Inc. d/b/a Russet Potato Exchange; and Yakima-Roche Fruit Sales, LLC.

For the sake of convenience, all claimants listed in the preceding paragraph,

---

[2]Doc. no. 14.

together with Nature Quality and Suttles, will hereinafter be referred to as "**the original plaintiffs.**"

A motion to extend the submission deadlines set forth in the Consent Order was filed on April 23, 2004 by the following entities, all of whom also filed Proofs of Claim and complaints in intervention pursuant to the terms of the Consent Order: Amerifresh, Inc.; Wm. Bolthouse Farms, Inc.; Calavo Growers, Inc.; DLF International, Inc.; Dovex Marketing, Inc.; A. Duda & Sons, Inc.; Frieda's, Inc.; Grimmway Enterprises, Inc. d/b/a/ Grimmway Farms; Kingston & Associates Marketing, LLC; L & M Companies, Inc.; Mills, Inc. d/b/a Mills Family Farms, Inc.; Potandon Produce, LLC; Seald Sweet Growers, Inc.; and Western Fresh Marketing.[3]

For the sake of convenience, all parties referred to in the preceding paragraph will hereinafter be referred to as "**the intervening plaintiffs.**"

The court entered an order granting the intervening plaintiffs' motion to extend the submission deadlines set forth in the Consent Order on April 28, 2004.[4] The original plaintiffs then moved the court to vacate the order on May 7, 2004,[5] and the court denied the motion on May 17, 2004.[6] The original plaintiffs appealed the May

---

[3] Doc. no. 136.
[4] Doc. no. 139.
[5] Doc. no. 147.
[6] Doc. no. 153.

17 order to the Eleventh Circuit Court of Appeals.[7] The action presently is before the court on the original plaintiffs' motion to stay the May 17, 2004 order pending appeal.[8]

## I. DISCUSSION

The original plaintiffs focus their argument on whether the court's May 17 order can be appealed pursuant to the Collateral Order Doctrine.[9] This argument ignores the truly pertinent issue, *i.e.,* whether a stay should be granted under the standards imposed by the United States Supreme Court and the Eleventh Circuit Court of Appeals. A stay pending appeal is considered "'extraordinary relief' for which the moving party bears a 'heavy burden.'" *Wyatt v. Sawyer,* 190 F.R.D. 685, 689 (M.D. Ala. 1999) (quoting *Winston-Salem/Forsyth County Board of Education v. Scott,* 404 U.S. 1221, 1231, 92 S. Ct. 1236, 1241, 31 L. Ed. 2d 441 (1971)).

The Supreme Court has instructed district judges to consider four factors when deciding whether to issue a stay pending appeal:

---

[7]*See* doc. no. 158 (notice of appeal).

[8]Doc. no. 156.

[9]*See* doc. no. 157 (brief in support of motion to stay), at 2-3. The Collateral Order Doctrine provides an exception to the general rule that, pursuant to 28 U.S.C. § 1291, appeals are available only from a "final decision" of a district court. *See Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S. Ct. 669, 673-74, 66 L. Ed. 2d 571 (1981); *Holt v. Ford,* 862 F.2d 850, 851 (11th Cir. 1989). "To qualify for immediate review under [the Collateral Order Doctrine], a non-final order must 'conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.'" *Holt,* 862 F.2d at 851 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S. Ct. 2454, 2458, 57 L. Ed. 2d 351 (1978)).

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S. Ct. 2113, 2119, 95 L. Ed. 2d 724 (1987). Of these four factors, the Eleventh Circuit has said that

> [o]rdinarily the first ... is the most important. A finding that the movant demonstrates a probable likelihood of success on the merits on appeal requires that we determine that the trial court below was clearly erroneous. But the movant may also have his motion granted upon a lesser showing of a "substantial case on the merits" when "the balance of the equities [identified in factors 2, 3, and 4] weighs heavily in favor of granting the stay."

*Garcia-Mir v. Meese,* 781 F.2d 1450, 1453 (11th Cir. 1986) (citations omitted) (bracketed alterations in original). The balance of these factors weighs in favor of denying the stay.

### A. Likelihood Of Success On Appeal

The original plaintiffs have made *no* showing, much less a "strong showing," of a "probable likelihood of success *on the merits* on appeal." Their argument is focused, instead, on whether the Eleventh Circuit has jurisdiction to hear the appeal pursuant to the Collateral Order Doctrine. Even if the Eleventh Circuit does decide to hear the appeal, this court concludes, for the reasons stated in its April 28 and May 17 orders, that its decision to extend the deadlines established by the Consent Order

was proper. The court also concludes that its decision was proper under applicable precedent relating to modification of consent decrees.

A "party seeking modification of a consent decree bears a heavy burden of persuasion." *Johnson v. Florida,* 348 F.3d 1334, 1341 (11th Cir. 2003) (citing *Sierra Club v. Meiburg,* 296 F.3d 1021, 1034 (11th Cir. 2002)). "A district court's decision to modify, or not modify, a consent decree is reviewed for abuse of discretion." *Johnson,* 348 F.3d at 1341 (citing *Jacksonville Branch, NAACP v. Duval County School Bd.,* 978 F.2d 1574, 1578 (11th Cir. 1992)). In deciding whether to modify a consent decree, the court first must determine whether the proposed modification would alter the "basic purpose" of the decree. *Reynolds v. McInnes,* 338 F.3d 1221, 1226 (11th Cir. 2003). If so, the modification will likely be forbidden. *Id.* "However, if the provision for which modification is sought 'merely sets out one of several means of accomplishing the purpose of the decree or one of several means of measuring compliance with the decree's objective then the requested modification is not necessarily prohibited.'" *Id.* (citing *United States v. City of Miami,* 2 F.3d 1497, 1505 (11th Cir. 1993)).

Here, the basic purpose of the Consent Order is to provide for preservation and distribution of PACA trust assets to the maximum extent possible for all parties holding valid PACA trust claims. Although timely distribution of PACA trust funds

is in the best interest of all parties, timeliness is not the "central purpose." Rather, the establishment of deadlines for submitting PACA trust claims, objections to claims, and replies to objections was merely a mechanism for accomplishing the true purpose of the Consent Order, *i.e.,* distribution of PACA trust assets to all parties holding valid PACA trust claims. Thus, modification of the Consent Order was not necessarily prohibited as an alteration of the order's central purpose.

Next, the court must determine whether to exercise its discretion to modify the decree.

> First, "a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 383, 112 S. Ct. 748, 760, 116 L. Ed. 2d 867 (1992). A party "may meet its initial burden by showing . . . a significant change either in factual conditions or in the law." *Id.* at 384, 112 S. Ct. at 760. Second, the proposed modifications must be "suitably tailored" to address the new factual or legal environment. *Id.* . . .
>
> *Rufo's* first requirement, that there be changed factual or legal circumstances, is interpreted flexibly, and different sorts of factual changes may qualify as changed circumstances permitting modification. *Ensley Branch, NAACP v. Seibels,* 32 F.3d 1548, 1563 (11th Cir. 1994). The *Rufo* Court observed that modification based on factual change may be appropriate in any of at least three situations: (1) "when changed factual conditions [have made] compliance with the decree substantially more onerous"; (2) "when a decree proves to be unworkable because of unforseen obstacles"; and (3) "when enforcement of the decree without modification would be detrimental to the public interest."

*Reynolds,* 338 F.3d at 1226-27 (bracketed alterations in original).

As set forth in the court's April 28 order, the intervening plaintiffs were not served with the PACA Proofs of Claim filed by the original plaintiffs, and they failed to gain timely access to those Proofs of Claim by other means. Thus, the intervening plaintiffs were unable to file objections to the claims of the original plaintiffs within the deadlines imposed by the Consent Order. These factual circumstances rendered compliance with the Consent Order *impossible*, not merely "more onerous," for the intervening plaintiffs. An extension of the deadlines imposed by the Consent Order was a "suitably tailored" solution to the intervening plaintiffs' situation. *Reynolds*, 338 F.3d at 1226.

Accordingly, the court concludes that its decision to extend the deadlines imposed by the Consent Order was proper, and that the original plaintiffs are unlikely to succeed in having that decision reversed on appeal.

B.    **Irreparable Injury Absent A Stay**

Further, the court finds that the absence of a stay will not cause the original plaintiffs irreparable injury. The original plaintiffs assert that, absent a stay, they will be required to defend against the allegedly untimely objections to their claims allowed by the court's April 28 and May 17 orders. They also assert that "the PACA trust funds will be gone before final disposition of the District Court action."[10]

---

[10] Doc. no. 156 (motion to stay), at ¶ 9.

Being required to defend against objections the original plaintiffs believe to be untimely may be undesirable or inconvenient for those plaintiffs, but it does not constitute "irreparable" injury. If the original plaintiffs have valid defenses to the allegedly untimely objections, those defenses will be considered by the court. If the original plaintiffs disagree with the court's ruling on those objections, they may seek relief through an appeal after entry of a final judgment.

Moreover, the PACA trust funds will not "be gone" before the final disposition of this action. Pursuant to the terms of the Consent Order, defendants Rawls Brokerage and Jess Rawls hold a fiduciary duty to preserve all PACA trust assets for all possible trust beneficiaries. Distribution of the trust funds will not be allowed until the court evaluates all PACA trust claims, considers all objections to those claims, as well as any replies to the objections, and enters a final judgment regarding distribution of the funds. If the original plaintiffs disagree with the court's ruling on distribution of the PACA trust funds, they may appeal at that time.

Thus, the original plaintiffs will not be irreparably injured if a stay is not issued. If anything, the absence of a stay actually *advances* the interests of the original plaintiffs. Indeed, one of the original plaintiffs' primary objections to the court's extension of the Consent Order deadlines was that "[a]ny delay in the distribution of

assets is prejudicial to the parties."[11] The more quickly this court moves to entry of a final, *appealable* judgment, therefore, the better for all parties concerned.

## C.     Substantial Injury To Other Interested Parties And Public Interest

The court also finds that the issuance of a stay would cause substantial injury to the other parties interested in this proceeding. This case encompasses the claims of many claimants who have not been directly involved in the heated dispute over extension of the Consent Order's deadlines. Any further unnecessary delay in the determination of these parties' rights would cause them injury. Finally, the public interest will be best served by resolving this multiple-claim, multiple-party action as quickly as possible.

## II. CONCLUSION

Based on analysis of all the pertinent factors, the original plaintiffs have failed to meet their heavy burden of showing that a stay should be entered. Accordingly, their motion for a stay of the court's May 17 order pending appeal will be denied. As the motion to stay was filed on May 24, the current deadline for filing replies to claims objections, the court recognizes that some of the claimants in this action may have delayed taking further action pending a ruling on the motion to stay. Accordingly, a short extension of time will be allowed for filing replies to claims objections, and for

---

[11]Doc. no. 146 (brief in support of motion to vacate), at 6.

filing motions to determine the validity of all claims. An appropriate order will be entered contemporaneously herewith.

DONE this __10th__ day of June, 2004.

_____
United States District Judge