FILED

2005 Jul-26  PM 05:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| NATURE QUALITY VINE RIPE TOMATOES, et al., | ) ) ) |
| Plaintiffs, | ) CIVIL ACTION NO. CV-04-HS-0016-S |
| | ) |
| v. | ) ) |
| RAWLS BROKERAGE, INC., et al., | ) ) ) |
| Defendants. | ) |

## OPINION & ORDER

This cause comes before the court on the Motion for Summary Judgment (doc. 282), filed by the plaintiffs Nature Quality Ripe Tomatoes, James L. Suttles, proprietor, *et al.* ("Plaintiffs").  The motion seeks a ruling on the validity of the claims for PACA[1] trust benefits filed by five intervening plaintiffs, Frieda's, Inc., Grimmway Enterprises, Inc., Kingston & Associates Marketing, LLC, Potandon Produce, LLC, and Seald-Sweet, LLC ("Intervening Plaintiffs").

The plaintiffs' objections call upon the court to harmonize the requirements of several provisions of the PACA and the regulations promulgated by the United States

---

[1]PACA is the Perishable Agricultural Commodities Act, 1930, as amended, 7 U.S.C.A. § 499a *et seq.*

Department of Agricultural (USDA).  For that reason, some background regarding the PACA is in order.

# I.
## BACKGROUND ON PACA

Congress created the PACA trust to address burdens of the nation's produce trade that would occur when commodities dealers would fail to pay produce suppliers for produce shipments and simultaneously give security interests in the same produce to the commodities dealer's other lenders.  *See* 7 U.S.C.A. § 499e(c)(1).  To remedy this problem, "PACA establishes a nonsegregated trust in which a produce dealer holds produce-related assets as a fiduciary until full payment is made to the produce seller.  The trust automatically arises in favor of a produce seller upon delivery of produce and is for the benefit of all unpaid suppliers or sellers involved in the transaction until full payment of the sums owing has been received."  *See Bowlin & Sons, Inc. v. San Joaquin Food Serv., Inc. (In re San Joaquin Food Serv., Inc.*), 958 F.2d 938, 939 (9th Cir. 1992) (citations omitted).  By establishing this statutory trust, PACA helps guarantee that produce suppliers will receive payments on the goods they sell.

To establish their right to trust benefits, however, PACA requires that produce sellers comply with certain specific requirements.  Among those requirements, PACA

2

requires that produce sellers receive payment on their goods within ten days of delivery, unless the parties expressly agree to a payment term in excess of ten days. If the parties agree to a payment term in excess of ten days, PACA requires that they make certain disclosures on the documentation related to their transactions. To resolve the instant motion, the court must determine exactly how demanding those disclosure obligations are.

Playing a central role in this dispute are sections 499e(c)(3) and (4) of PACA. Those sections provide as follows:

> (3)  The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calender days (i) after expiration of [ten days],[2] (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored.  The written notice to the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust.  When the parties expressly agree to a payment time period different from [ten days],[3] a copy of any such

---

[2]PACA actually reads, "after the expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary[.]" The Secretary of the USDA has issued regulations prescribing that payment should be made within ten days. *See* 7 C.F.R. § 46.2(z) & (aa).

[3]*See* note 2, *supra*.

agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.

(4) In addition to the method of preserving the benefits of the trust specified in paragraph (3), a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust. The bill or invoice statement must include the information required by the last sentence of paragraph (3), and contain on the face of the statement the following: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930, (7 U.S.C. 399e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."

7 U.S.C.A. § 499e(c)(3)-(4).

In the regulations implementing these provisions, the Secretary of Agriculture has interpreted these sections as establishing two separate steps that produce sellers who use extended payment term contracts must take to be entitled to trust benefits. First, the produce seller must establish its eligibility to receive trust benefits. Second, the produce seller must preserve its trust benefits.

Section 46.46(e), title 7 of the CFR, contains the eligibility requirements, which, in relevant part, are as follows:

(e) Prompt payment and eligibility for trust benefits

4

> (1) The times for prompt accounting and payment are set out in § 46.2(z) and (aa).  Parties who elect to use different times for payment must reduce their agreement to writing before entering into the transaction and maintain a copy of their agreement in their records, and the times of payment must be disclosed on invoices, accountings, and other documents relating to the transaction.
>
> (2) The maximum coverage under the trust is 30 days after receipt and acceptance of the commodities as defined in 46.2(dd) and paragraph (a)(1) of this section.

7 C.F.R. § 46.46(e)(1)-(2).

Section 42.42(f), title 7 of the CFR, provides the requirements for a produce seller to preserve its entitlement to trust benefits.  The section sets out two separate methods for trust preservation.  The first method is contained in § 42.42(f)(1)-(2), and reiterates the method of trust preservation contained in 7 U.S.C.A. § 499e(c)(3).  The second method implements the method of trust preservation found in 7 U.S.C.A. § 499e(c)(4), and provides as follows:

> (3) Licensees may chose an alternate method of preserving trust benefits from the requirements described in paragraphs (f)(1) and (2) of this section.  Licensees may use their invoice or other billing statement to preserve trust benefits.   The alternative method requires that the licensee's invoice or other billing statement, given to the debtor, contain:
>
> (i) The statement: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930, (7 U.S.C. 399e(c)).  The seller of these commodities retains a trust claim over

5

these commodities, all inventories of food or other
products derived from these commodities, and any
receivables or proceeds from the sale of these commodities
until full payment is received."; and
(ii) The terms of payment if they differ from prompt
payment set out in section 46.2(z) and (aa) of this part, and
the parties have expressly agreed to such terms in writing
before the affected transactions occur.

7 C.F.R. § 46.46(f)(3)(i)-(ii).

## II.
### FACTUAL BACKGROUND

The intervening plaintiffs are produce sellers who entered into extended
payment term contracts with the defendant, Rawls Brokerage.  When the intervening
plaintiffs filed their claims for trust benefits from the Rawls trust, the plaintiffs
objected, arguing that the intervening plaintiffs did not comply with the requirements
PACA imposes on extended payment term claimants.  With the exception of Seald-
Sweet, LLC, it is undisputed that the intervening payments disclosed the extended
payment term on all of the invoices related to the relevant produce deliveries.
However, it is also undisputed that the intervening plaintiffs failed to disclose the
extended payment term on several *other* documents related to the relevant produce
deliveries.  The question presented, therefore, is whether or not PACA required the
intervening plaintiffs to disclose their extended payment term on those other
documents.

6

## III.
### ANALYSIS

**A.**   ***Relevance of the USDA's Regulations***

Earlier in this litigation, the intervening plaintiffs took the position that they were entitled to trust benefits so long as they disclosed the extended payment terms on their invoices as required by 7 U.S.C.A. § 499e(c)(4) and 7 C.F.R. § 46.46(f)(3). The court rejected that argument because 7 U.S.C.A. § 499e(c)(4) and 7 C.F.R. § 46.46(f)(3) are germane only to the issue of trust preservation, and section 46.46(e), title 7 of the CFR, clearly provides, as a separate requirement, that produce sellers also establish their eligibility for benefits.  Because the issue of eligibility depends on more than just the parties' invoices, the court ruled that the intervening plaintiffs were incorrect in their position that the invoices alone could be dispositive.

Acknowledging the court's ruling, in opposing the instant motion, the intervening plaintiffs make two new arguments.  First, the intervening plaintiffs argue that the statute is clear and unambiguous, and therefore the court should not even look at the USDA's regulations in making its interpretation.  *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (court's inquiry into the meaning of a statute must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent).

7

This argument, however, is plainly inapplicable to this case.  Rather than being clear and unambiguous, the provisions of PACA at issue here have several ambiguities.  First, for a produce seller who uses an extended payment term and also uses the invoice method of preservation under § 499e(c)(4), it is unclear whether the produce seller also must disclose the extended payment term "on invoices, accountings, and other documents relating to the transaction."  Second, if the disclosure of the extended payment term on those documents is not required, then it is unclear whether the same produce seller is required to file "a copy of any such agreement … in the records of each party to the transaction," or whether that obligation also is excused if the seller uses the invoice method.  Third, while it is clear that parties can agree to a payment term in excess of ten days, the statute does not make clear whether there is any limit to the length of the payment term that they may choose.  Finally, if the extended payment term must be disclosed "on invoices, accountings, and other documents relating to the transaction[,]" there is a quintessential ambiguity as to what is indicated by the reference to "other documents."  These provisions of the PACA, therefore, are ambiguous, and the USDA's regulations must be consulted.

**B.    *Validity of the USDA's Regulations***

The intervening plaintiffs' second argument is that the USDA's regulations, to

the extent that the regulations impose a separate eligibility requirement, are contrary to the statute.  In making this argument, the intervening plaintiffs note that § 499e(c) refers to "preserv[ing] the benefits" once in § 499e(c)(3) and again in § 499e(c)(4), but it nowhere mentions "eligibility" for trust benefits.  Similarly, the title of § 499e(c) refers to "preservation of trust," but not "eligibility."  Because the statute refers only to preservation, the intervening plaintiffs argue that PACA only requires a produce seller to properly "preserve" its trust benefits, and it does not impose a separate requirement that they maintain their eligibility.  From this, the intervening plaintiffs conclude that their claims are valid because they preserved their entitlement to trust benefits through the invoice method.

    This argument has two problems.  First, the United States Supreme Court has made clear that, when interpreting a statute, "[t]he title of a statute cannot limit the plain meaning of the text."  *Penn. Dep't of Corrections v. Yeskey*, 524 U.S. 206, 212 (1998) (quoting *Bhd. of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 528-529 (1947)) (ellipsis omitted)).  Consequently, the absence of the word "eligibility" in the title of subsection (c) cannot provide a basis for concluding that no eligibility requirement exists, if the statutory text provides to the contrary.

    The second problem is that, here, the text does provide a basis for finding an eligibility requirement.  The last sentence of § 499e(c)(3) requires that "[w]hen the

parties expressly agree to a payment time period different from that established by the secretary, a copy of any such agreement shall be filed in the records of each party to the transaction …." This requirement has nothing to do with trust preservation. Trust preservation has to do with submitting a document to a produce broker after the broker has defaulted on payment. Instead, this is a requirement imposed by PACA that is separate and distinct from preservation. The existence of this requirement in § 499e(c)(3) therefore supports the USDA's interpretation that PACA imposes an eligibility requirement that is independent from properly preserving trust benefits.[4]

Also supporting the USDA's interpretation is the fact that the statute imposes no outside limit on the length of the parties' payment term if they agree to exceed the ten-day term. As the intervening plaintiffs admit, the key purpose of PACA is "assuring payment to produce suppliers." (Intervening Pla. Memorandum Opp. Summ J. at 11); *see also* H.R. Rep. No. 98-543 at 7 (1983), *reprinted in* 1984 U.S.C.A.A.N. 405, 410 ("[T]he committee does not intend the trust to apply to any

---

[4]*See Goldman Fruit & Produce Co. v. Lombardo Fruit & Produce Co. (In re Lombardo Fruit & Produce Co.)*, 12 F.3d 110, 114 (8th Cir. 1993) (existence of a written agreement prior to transaction is a condition of eligibility for trust benefits); *but see Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 209 (3rd Cir. 1998) (rejecting the argument that reducing an agreement to writing is a prerequisite to a seller's entitlement to trust benefits). The court respectfully disagrees with the Third Circuit's interpretation of PACA, which, by the Third Circuit's own admission, leaves those who comply with PACA "in no better position than those who do not." *Id.* The court instead agrees with the positions of the Eighth, cited above, and Ninth Circuits, *see San Joaquin Food Serv.*, 958 F.2d at 940, which construe the last sentence of § 499e(c)(3) to set preconditions of a party's entitlement to trust benefits.

credit transaction that extends beyond a reasonable period."). This purpose would be undermined if there were no limit on length of the payment term. Conversely, the purpose is furthered by imposing such a limit. Consequently, the USDA advanced PACA's objectives by establishing that the parties could not agree to a payment term longer than thirty days, and by imposing such a limit as a condition of eligibility for PACA benefits. The USDA's eligibility requirement, therefore, is fully supported by the text and purposes of the statute.

The intervening plaintiffs' final argument is that, under the USDA's interpretation, the requirement in § 499e(c)(4) that "[t]he bill or invoice statement must include the information required by the last sentence of paragraph (3)" is redundant and superfluous since invoices already are required, as a condition of eligibility, to disclose the payment term on "invoices" and "accountings." What this argument fails to apprehend, however, is that § 499e(c)(4) applies to all produce sellers, regardless of whether they use an extended payment term or the USDA's ten day term. Because the last sentence of § 499e(c)(3) applies only to sellers using an extended payment term, sellers using the ten-day term are not otherwise subject to a requirement to disclose the payment term of their transaction on their invoices. If they use the invoice method, however, § 499e(c)(4) requires that they disclose their payment term on the invoices they use to preserve their trust benefits. Thus, §

499e(c)(4)'s requirement is not superfluous since it extends the disclosure requirement to an additional class of produce sellers, i.e., those using the ten-day term.[5]

Accordingly, the USDA acted within its statutory authority in promulgating regulations that clarify PACA's eligibility requirements. Because these regulations are valid, the intervening plaintiffs were obligated to comply with them.

## C.    *The Proper Meaning of "Other Documents"*

The last issue is the one most closely contested by the parties. The question is, what is the meaning of "other documents relating to the transaction" as that phrase is used in § 499e(c)(3) and 7 C.F.R. § 46.46(e)(1)?

The plaintiffs argue that because the statutory text imposes no limit on the reference to "other documents," the term refers without limitation to any document relating to the transaction. Thus, the plaintiffs' argument is that, due to the absence of any limiting language, "other documents" means *all* other documents.

---

[5]Admittedly, by requiring the disclosure of the payment term only if the parties vary from the ten-day term, 7 C.F.R. § 46.46(f)(3)(ii) relieves produce sellers using the ten-day payment term of the requirement to disclose the payment term when using the invoice method of trust preservation. Because none of the intervening plaintiffs used the ten-day term, the court is not called upon to review the validity of this regulation. Even so, given PACA's clear purpose to ensure prompt payment for produce sellers, the USDA's regulation is consistent with the statutory purpose in so far as it eases the trust preservation requirements for produce sellers using the ten-day term. *See Overton Distributors v. Heritage Bank*, 340 F.3d 361, 365 (6th Cir. 2003) ("[PACA] is intended to protect only those produce sellers making short-term credit arrangements.").

Although the intervening plaintiffs concede that there is no overt limitation on scope of "other documents" in the text, they argue that the phrase is reasonably susceptible to multiple interpretations and urge the court to apply two cannons of statutory construction which will limit the words' scope.

As discussed above, the court finds that the phrase "other documents relating to the transaction" is a quintessential example of statutory ambiguity.  Although the plaintiffs' argument that "other documents" refers to *all* other documents is plausible, it is by no means inevitable, and certainly is not the sole reasonable construction.  Indeed, the all-encompassing breadth of the construction is enough to give any reasonable interpreter pause.  Given the variety of documents which could possibly arise in relation to a sale of produce,[6] it is hard to perceive a rationale that would require all such documents to include the payment term.[7]  This is particularly so when

---

[6]This case demonstrates well the variety of documents that a produce seller may produce in relation to a transaction. For instance, intervening plaintiff Potandon Produce, in relation to the subject transactions, produced the following documents: pick tickets, salesperson forms, orders, contracts to haul, loading manifests, bills of lading, carrier confirmations, aging reports, quote sheets, and salesperson notes, in addition to its invoices.  (*Stipulation of the Parties Regarding Disputed Claims of Five (5) Intervening Plaintiffs* ¶ 23.)

[7]The only rationale for this interpretation offered by the plaintiffs is that Congress, while permitting produce sellers to deviate from the USDA's payment term, wanted to make it exceedingly difficult for produce sellers choose this option.  To accept this rationale, the court would have to conclude that Congress was engaging in a bit of gamesmanship, offering the option of choosing payment terms longer than those established by the USDA, but subjecting those sellers to impractical and exacting documentation requirements that the sellers likely would be unable to meet.  The court can reject the plaintiffs' proposed rationale simply by concluding that, if Congress determined to permit sellers to deviate from the USDA's prompt payment

13

the text is equally supportive of the alternative interpretation offered by the intervening plaintiffs whereby "other documents" is construed to mean documents similar to "invoices" and "accountings."  Furthermore, because the text of the statute and the regulation are susceptible to more than one reasonable interpretation, the text is ambiguous.  *Cf. San Joaquin Food Serv.*, 958 F.2d at 940-41 (suggesting, but not deciding, that the phrase "other documents relating to the transaction" is ambiguous).

To resolve the ambiguity, the intervening plaintiffs urge the court to apply two cannons of statutory construction.  The first cannon that intervening plaintiffs recommend is the doctrine of *ejusdem generis*.  The cannon states that "when general words follow an enumeration of specific terms the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."  *Miami Heart Institute v. Sullivan*, 868 F.2d 410, 413 (11th Cir. 1989).  The cannon has been described by the Eleventh Circuit as "one of the oldest and most respected rules of statutory construction."  *Id.*  The second recommended cannon is the doctrine of *noscitur a sociis*, which means that "a word is known by the company it keeps," and it has been employed by the Supreme Court to avoid giving "'unintended breadth to the Acts of Congress.'"  *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (quoting *Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307

---

term—which it did—then Congress meant for this to be a real, and not illusory, option.

(1961)).

These cannons are squarely applicable to the instant question.  As the cannons suggest, it seems reasonable that by using the phrase, "other documents relating to the transaction," Congress sought only to prevent a produce seller from circumventing the reach of the statute by using a document with a title other than "invoice" or "accounting," such as a "bill," "billing statement," or any of the variety of terms a seller could use to describe a request for payment.  Indeed, the terms "bill" and "billing statement" are common enough that they appear in § 499e(c)(4) and 7 C.F.R. § 46.46(f)(3), and appear to be precisely the sort of documents Congress sought to encompass when it referred to "other documents relating to the transaction." Moreover, the plaintiffs fail to advance any credible argument against applying the cannons of statutory construction urged by the intervening plaintiffs, other than their primary argument that the statute does not require construction because its text is clear and unambiguous.  The court already has rejected that argument.

Applying the above-cited cannons of statutory construction, the court rules that "other documents relating to the transaction" refers only to other documents which, like invoices and accountings, seek payment for delivered produce.

**D.**     ***The Validity of the Intervening Plaintiffs' Claims***

Applying PACA and the USDA's regulations as interpreted above, the court will now address the validity of each intervening plaintiffs' claim.

1.     *Frieda's, Inc.*

Frieda's, Inc., entered into an agreement with Rawls Brokerage to receive payment within 14 days of the date of shipment.  (*Stipulation of the Parties Regarding Disputed Claims of Five (5) Intervening Plaintiffs* ¶ 1.)  The extended payment term, "Net 14 Days," was disclosed on Frieda's invoices relating to the five transactions for which Frieda's seeks trust benefits.  (*Id.* ¶ 4.)  Frieda also produced accountings and picking tickets, which it used as bills of lading, and these documents did not contain the extended payment terms.  (*Id.* ¶¶ 4, 5.)

Under § 499e(c)(3) and 7 C.F.R. § 46.46(e)(1), Frieda's was required to disclose the extended payment term on the accountings related to the five transactions for which Frieda's seeks trust benefits.  Because it failed to do so,  the court finds that Frieda's failed to maintain its eligibility for trust benefits on the claimed transactions.  Accordingly, the plaintiffs' objection to Frieda's proof of claim is **SUSTAINED**, and Frieda's claim is **DENIED**.

2.     *Grimmway Enterprises, Inc.*

Grimmway Enterprises, Inc., entered into an agreement with Rawls Brokerage

16

to receive payment within 30 days of the date of shipment.  (*Id.* ¶ 9.) The extended payment term, "Net 30," was disclosed on Grimmway Enterprises' invoices, bills of lading, and sales reports relating to the twelve transactions for which Grimmway Enterprises seeks trust benefits.  (*Id.* ¶ 11.)  Grimmway Enterprises also produced accountings, passing reports, and other miscellaneous documents that did not contain the extended payment terms.  (*Id.* ¶¶ 10-11.)

Under § 499e(c)(3) and 7 C.F.R. § 46.46(e)(1), Grimmway Enterprises was required to disclose the extended payment term on the accountings related to the twelve transactions for which Grimmway Enterprises seeks trust benefits.  Because it failed to do so, the court finds that Grimmway Enterprises failed to maintain its eligibility for trust benefits on the claimed transactions.  Accordingly, the plaintiffs' objection to Grimmway Enterprises' proof of claim is **SUSTAINED**, and Grimmway Enterprises' claim is **DENIED**.

3.    *Kingston & Associates Marketing, LLC*

Kingston & Associates Marketing, LLC, entered into an agreement with Rawls Brokerage to receive payment within 21 days of the date of the invoice.  (*Id.* ¶ 15.) The extended payment term, "Net 21," was disclosed on Kingston & Associates' invoices, sales confirmations, and passings relating to the four transactions for which Kingston & Associates seeks trust benefits.  (*Id.* ¶¶ 16-17.) Kingston & Associates

also produced accountings, bills of lading, loading manifests, and other miscellaneous documents that did not contain the extended payment terms. (*Id.*)

Under § 499e(c)(3) and 7 C.F.R. § 46.46(e)(1), Kingston & Associates was required to disclose the extended payment term on the accountings related to the four transactions for which Kingston & Associates seeks trust benefits. Because it failed to do so, the court finds that Kingston & Associates failed to maintain its eligibility for trust benefits on the claimed transactions. Accordingly, the plaintiffs' objection to Kingston & Associates' proof of claim is **SUSTAINED**, and Kingston & Associates' claim is **DENIED**.

4.    *Potandon Produce, LLC*

Potandon Produce, LLC, entered into an agreement with Rawls Brokerage to receive payment within 21 days of the date of the shipment. (*Id.* ¶ 21.) The payment term, "Net 21," was disclosed on Potandon Produce's invoices, invoice register, and passings related to the six transactions for which Potandon Produce seeks trust benefits. Potandon Produce also produced accountings, pick tickets, salesperson forms, orders, contracts to haul, loading manifests, bills of lading, carrier confirmations, aging reports, quote sheets, and salesperson notes that did not contain the extended payment terms. (*Id.* ¶¶ 22, 23.)

Under § 499e(c)(3) and 7 C.F.R. § 46.46(e)(1), Potandon Produce was required

to disclose the extended payment term on the accountings related to the six transactions for which Potandon Produce seeks trust benefits.  Because it failed to do so, the court finds that Potandon Produce failed to maintain its eligibility for trust benefits on the claimed transactions.    Accordingly, the plaintiffs' objection to Potandon Produce's proof of claim is **SUSTAINED**, and Potandon Produce's claim is **DENIED**.

5.    *Seald-Sweet, LLC*

Seald-Sweet, LLC, entered into an agreement with Rawls Brokerage to receive payment within 30 days of the date of the shipment.  (*Id.* ¶ 26.)  Seald-Sweet failed to disclose the 30-day extended payment term on any of the documents related to the fourteen transactions for which Seald-Sweet seeks trust benefits.  Instead, Seald-Sweet's invoices stated "PACA Terms."  (*Id.* ¶ 28.)  Seald-Sweet also produced accountings, order forms, shipping point inspections, and bills of lading that did not contain the extended payment terms.  (*Id.* ¶¶ 27-28.)

Under § 499e(c)(3)-(4) and 7 C.F.R. § 46.46(e)-(f), Seald-Sweet was required to disclose the extended payment term on the invoices and accountings related to the fourteen transactions for which Seald-Sweet seeks trust benefits.  Because it failed to do so, the court finds that Seald-Sweet failed to maintain its eligibility for trust benefits and failed to properly preserve its trust benefits on the claimed transactions.

Accordingly, the plaintiffs' objection to Seald-Sweet's proof of claim is **SUSTAINED**, and Seald-Sweet's claim is **DENIED**.

A separate order regarding the plaintiffs' motion for summary judgment will be entered.

**DONE** and **ORDERED** this 26th day of July, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

20